IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| | : | |
| **IVORI LANISE CULLINS,** | : | CASE NO. **21-50357**-WLH |
| | : | |
| Debtor. | : | |
| — — — — — — — — — | : | |
| | : | — — — — — — — — — — |
| AF TITLE CO. DBA AMERICAN FINANCIAL, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | CONTESTED MATTER |
| | : | |
| IVORI LANISE CULLINS, Debtor;  and S. GREGORY HAYS, Trustee, | : | |
| | : | |
| Respondents. | : | |
| | : | |
| | : | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that **AF Title Co. dba American Financial** has filed a Motion for Relief from Automatic Stay and related papers with the Court seeking an order of relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion for Relief from Automatic Stay, in Courtroom 1403, The Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia  30303  at 9:30 a.m. on February 18, 2021.**

*Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website (http://www.ganb.uscourts.gov/) prior to the hearing for instructions on whether to appear in person or by phone.*

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then

you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address for the Clerk's Office is: Clerk, United States Bankruptcy Court, Room 1340, U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia  30303. You must also mail a copy of your response to the undersigned at the address stated below.

IF THE MOTION IS FOR RELIEF FROM STAY, and a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consent to the automatic stay remaining in effect until the Court orders otherwise.

Dated: <u>January 22, 2021</u>        Signature: <u>/s/Andrew D. Gleason</u>
                                Andrew D. Gleason
                                5555 Glenridge Connector
                                Suite 900
                                Atlanta, Georgia  30342
                                (404) 869-6900
                                agleason@lrglaw.com
                                Bar Number 297122

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE                                           :        CHAPTER 7
                                                :
**IVORI LANISE CULLINS**,                        :        CASE NO. **21-50357-WLH**
                                                :
        Debtor.                                 :
— — — — — — — — — —                              :        — — — — — — — — — — —
AF TITLE CO. DBA AMERICAN                       :
FINANCIAL,                                      :
                                                :
        Movant,                                 :
                                                :
v.                                              :        CONTESTED MATTER
                                                :
IVORI LANISE CULLINS, Debtor;  and              :
S. GREGORY HAYS, Trustee,                       :
                                                :
        Respondents.                            :
                                                :
                                                :

## MOTION FOR RELIEF FROM AUTOMATIC STAY

NOW COMES AF TITLE CO. DBA AMERICAN FINANCIAL (the "Movant") and moves this Court for relief from the automatic stay and shows the Court as follows:

1.

On January 14, 2021, Ivori Lanise Cullins ("Debtor") filed a Voluntary Petition pursuant to 11 U.S.C. Chapter 7, and said case is pending before this Court.

2.

Movant is the holder of a claim based on a lease agreement with Debtor on a 2016 Chevrolet Trax LS vehicle.   The approximate payoff is $22966.28 as of 1/20/2021.  Lease documents supporting the claim are served herewith on the parties.  The Lease was entered into on March 11, 2020.   The lease terms 98 bi-weekly payments of $276.16.  The account is due for the 12/15/2020 payment.  Another payment comes due on January 27, 2021.  The account is at past due $828.48 which includes $97.50 in damage waiver fees.

3.

If the lease is assumed, the Debtor should be required to continue to keep the account current and make any payments necessary to do so.

4.

The Lease Agreement is a "true lease" under Georgia law.

5.

If the Debtor seeks to assume the lease,  Movant seeks an order memorializing the assumption of the lease and the Debtor would need to cure any arrearage promptly.

6.

Debtor fails to provide for attorneys fees and adequate assurance of future performance. 11 U.S.C. §365(b)(1).

7.

Debtor does not own the vehicle and therefore does not have an equity in the Vehicle or the Lease Agreement and neither the Vehicle nor the Lease Agreement is necessary to an effective reorganization that is in prospect.  The Trustee's interest should be abandoned.

8.

Cause exists including the lack of adequate protection to grant Movant relief from the automatic stay so as to authorize Movant to recover and dispose of the Vehicle.

9

Movant requests that Rule 4001(a)(3) be waived.

10.

Movant has no proof of full coverage insurance protecting its interest in the Collateral.

11.

Movant requests that the Debtor Assume or reject the lease pursuant to 11 U.S.C. Section 365.

WHEREFORE, Movant prays that this Court:

(a)  Hold a Hearing pursuant to this Motion within thirty (30) days as is required under 11 U.S.C. Section 362(e);

(b) Enter an Order terminating the estate's interest in the Lease Agreement as herein

defined and providing further that the automatic stay, to the extent it restrains Movant from enforcing its rights in and to the Vehicle, be vacated;

     c) Rule 4001(a)(3) be waived; and

     d) Grant such other and further relief as the Court deems to be just and proper.


This January 22, 2021.

                The Law Office of
                LEFKOFF, RUBIN, GLEASON, RUSSO & WILLIAMS, P.C.
                Attorneys for Movant


                By: /s/Andrew D. Gleason
                   Andrew D. Gleason
                   Georgia State Bar No. 297122

5555 Glenridge Connector
Suite 900
Atlanta, Georgia  30342
(404) 869-6900
agleason@lrglaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE                                               :        CHAPTER 7
                                                    :
**IVORI LANISE CULLINS,**                           :        CASE NO. **21-50357**-WLH
                                                    :
        Debtor.                                     :
_ _ _ _ _ _ _ _ _ _ _                               :        _ _ _ _ _ _ _ _ _ _
AF TITLE CO. DBA AMERICAN                           :
FINANCIAL,                                          :
                                                    :
        Movant,                                     :
                                                    :
v.                                                  :        CONTESTED MATTER
                                                    :
IVORI LANISE CULLINS, Debtor;  and                  :
S. GREGORY HAYS, Trustee,                           :
                                                    :
        Respondents.                                :
                                                    :
                                                    :

## CERTIFICATE OF SERVICE

        The undersigned, Andrew D. Gleason, hereby certifies that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that I served the MOTION FOR RELIEF FROM AUTOMATIC STAY and NOTICE OF HEARING on the following parties 1) electronically, if allowed by and pursuant to the requirements of local rule, or 2) by  depositing same in the United States Mail in properly addressed envelope(s) with adequate postage to all others, as follows:


Ivori Lanise Cullins
8217 Culquit Road Apt. B
Atlanta, GA 30350

Karen King
King & King Law LLC
215 Pryor Street, S.W.
Atlanta, GA 30303

S. Gregory Hays
Chapter 7 Trustee
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

     This January 22, 2021.

          The Law Office of
          LEFKOFF, RUBIN, GLEASON, RUSSO & WILLIAMS, P.C.
          Attorneys for Movant


          By: /s/Andrew D. Gleason
           Andrew D. Gleason
              Georgia State Bar No. 297122

5555 Glenridge Connector
Suite 900
Atlanta, Georgia  30342
(404) 869-6900
agleason@lrglaw.com



ACCT # _____ **5**

LEASE DATE 03-11-2020

## GEORGIA MOTOR VEHICLE LEASE AGREEMENT
### (With Limited/Conditional Rights of Use and Operation)

**LESSEE AND CO-LESSEE** — Name, Address (including County)  IVORI CULLINS

4355 CASCADE RD SW Atlanta, GA 30331-2051 Fulton

**LESSOR** — Name, Address  RAC Dealership, LLC dba American Car Center

4474 BUFORD HWY NE CHAMBLEE, GA 30341

**ASSIGNEE – AF Title Co. ("Assignee")**, 6400 Winchester Rd., Memphis, TN 38115.  Assignee may also be considered a lessor for purposes of Regulation M.  AF Title Co. and certain of its affiliates and servicing affiliates do business as American Financial.

**PRIMARY PURPOSE OF LEASE** (check as applicable): __x_ personal, family or household (consumer purpose). _____ business, commercial or agricultural (non-consumer) purpose.

**DESCRIPTION OF LEASED VEHICLE:**

| NEW/USED | MILEAGE AT DELIVERY | YEAR/MAKE/MODEL | GVW if TRUCK (lbs) | VEHICLE ID NUMBER |
|---|---|---|---|---|
| USED | 49,567 | 2016 CHEVROLET TRAX LS | | KL7CJKSB2GB532754 |

### DISCLOSURES REQUIRED UNDER THE FEDERAL CONSUMER LEASING ACT AND REGULATION M (e = estimate)

| 1. Amount Due at Lease Signing or Delivery. (itemized below)* | 2. Periodic Rental Payments. | 3. Other Charges. (not part of your periodic payment) | 4. Total of Payments. (The amount you will have paid by the end of the Lease). |
|---|---|---|---|
| $ 1250.00 | A. Your first payment of $ 276.16 shall be due on 03-11-2020 followed by 97 payments of $ 276.16 due: ___ bi-weekly ✓ semi-monthly ___ monthly  B. The total of your periodic payments will be: $ 27063.68 | Disposition Fee $0.00  Total: $0.00 | $ 28037.18 |

### *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

| 5. AMOUNT DUE AT LEASE SIGNING OR DELIVERY. | | 6. HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID. | |
|---|---|---|---|
| (a) Capitalized Cost Reduction | $ -400.00 | (a) Net Trade-in Allowance | $ 0.00 |
| (b) First Periodic Lease Payment | $ 276.16 | (b) Rebates and Noncash Credits | $ N/A |
| (c) Refundable Security Deposit | $ 0.34 | (c) Amount to be Paid by Cash or Card | $ 1250.00 |
| (d) License Fee | $ 0.00 | | |
| (e) Temporary License Fee | $ N/A | | |
| (f) Certificate of Title Fee | $ 18.00 | | |
| (g) DPS Handling Fee | $ N/A | | |
| (h) Vehicle Inspection Fee | $ N/A | | |
| (i) Doc Fee | $ 10.00 | | |
| (j) Sales/Rental/Lease Tax | $ 0.00 | | |
| (k) ETR Processing Fee | $ 18.50 | | |
| (l) LOCAL TAX | $ N/A | | |
| (m) BUSINESS TAX | $ N/A | | |
| (n) Title Ad Valorem Tax | $ 1327.00 | | |
| TOTAL: | $ 1250.00 | TOTAL: | $ 1250.00 |

**7. Periodic PAYMENT CALCULATION.** Your periodic payment is determined as shown below.

| | | |
|---|---|---|
| (a) | GROSS CAPITALIZED COST. The agreed upon value of the Vehicle ($ 20100.00 ) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance). If you want an itemization of the Gross Capitalized Cost, please check this space. ___ | $20100.00 |
| (b) | CAPITALIZED COST REDUCTION. The amount of any net-trade-in allowance, rebate, noncash credit or cash you pay that reduces the Gross Capitalized Cost. | − $ -400.00 |
| (c) | ADJUSTED CAPITALIZED COST. The amount used in calculating your Base Periodic Payment. | = $20500.00 |
| (d) | RESIDUAL VALUE. The value of the Vehicle at the end of the Lease used in calculating your Base Periodic Payment. | − $ 3897.00 |
| (e) | DEPRECIATION AND OTHER AMORTIZED AMOUNTS. The amount charged for the Vehicle's decline in value through normal use and for any other items paid over the Lease Term. | = $16603.00 |
| (f) | RENT CHARGE. The amount charged in addition to the Depreciation and any Amortized Amounts. | + $10460.66 |
| (g) | TOTAL OF BASE PERIODIC PAYMENTS. Depreciation and any Amortized Amounts, plus the Rent Charge. | = $27063.68 |
| (h) | LEASE PAYMENTS. The number of Payments in your Lease. | ÷ 98 |
| (i) | BASE PERIODIC PAYMENT. | = $ 276.16 |
| (j) | SALES/RENTAL/LEASE/USE TAX. ___ Bi-weekly ✓ Semi-monthly ___ Monthly. | + $ 0.00 |
| (k) | OTHER. N/A | N/A |
| (l) | TOTAL PERIODIC PAYMENT. | = $ 276.16 |

**8. EARLY TERMINATION.** You may have to pay a substantial charge if you end this Lease early. *The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.*

**9. EXCESS WEAR AND USE.** You may be charged for excessive wear to the Vehicle based upon our standards for normal use, and for miles driven in excess of 17200 miles per year at the rate of 15 cents per mile. You will not receive a rebate or credit if the number of miles driven is less than the above amount.

**10. PURCHASE OPTION AT END OF LEASE TERM.** You have an option to purchase the Vehicle at the End of the Lease Term for: (a) $ 3897.00 ; plus (b) applicable taxes, title transfer fees, and other official fees and charges; plus (c) any amounts necessary to repair the Vehicle to conform with legal requirements for sale (unless you agree to purchase the Vehicle for parts only).

**11. OTHER IMPORTANT TERMS.** You should look to the other terms and conditions of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and other charges if applicable.

**12. LEASE OF VEHICLE.** You agree to lease the Vehicle subject to the terms and conditions of this Lease Agreement. You agree to pay 98 lease payments of $ 276.16 . The first lease payment is due on the date this Lease Agreement is signed. The remainder of your lease payments is due ___ bi-weekly ✓ semi-monthly ___ monthly beginning on 04-30-2020. All subsequent lease payments should be paid directly to Assignee at Assignee's address indicated on page 1 of this Lease Agreement.

1

ACC. .. _____

13. **OFFICIAL FEES AND TAXES.** $ 1373.50 _____. The total estimated amount you will pay for official fees, license and title fees, and taxes over the Lease Term, whether included in your Base Periodic Payment (Item 7(j)) or assessed otherwise. The actual amount of fees and taxes that you may be required to pay may be higher or lower depending upon the tax rates in effect and the value of the Vehicle at the time the fee or tax is assessed.

14. **LATE CHARGE AND OTHER POTENTIAL CONDITIONAL CHARGES/FEES.** You agree to pay a late charge on each lease payment that is received after it is due at the rate of $5 per day with a maximum of $15. Other Potential Conditional Charges/Fees you may incur include the following: 1) If your leased vehicle is repossessed due to non-payment or other breach of this Agreement, you will be charged up to a $350 repossession fee, which may be lower depending upon the state, city or county where your vehicle is principally garaged; 2) In certain states, cities, and/or counties, if you desire to redeem your repossessed vehicle, you may incur a storage fee from the third party vendor that repossessed and is storing your repossessed vehicle (we do not receive any amount of this third party storage fee); 3) If you request a deferral/extension/due date change regarding your Lease, you will be charged a $25 Fee for a Due Date change, a $25 Fee for a one payment bi-weekly or semi-monthly deferral, or a $50 Fee for a 30 day deferral (which could be on monthly lease payment, or two bi-weekly or semi-monthly lease payments); 4) If we extend you a 0% repair deferral account on an approved vehicle repair not covered by warranty and you fail to timely make payments, you will be charged a late fee on said account pursuant to this provision; 5) If you have American Car Center's service department complete a diagnostic evaluation of a potential repair(s), and you decide not to complete the recommended repair(s), you will be charged a $60 Diagnostic Fee; 6) If you choose to pay your lease or purchase option payments pursuant to our one-time phone or website options, you may incur a convenience fee up to $4.95 per payment (ask about our multiple payment options that allow you to avoid convenience fees).

15. **LIMITED/CONDITIONAL RIGHT OF USE AND OPERATION.** This Lease does not give you complete rights with respect to the Vehicle. You have only a limited and conditional right to use and operate the Vehicle provided that you make timely lease payments to Assignee.

16. **GPS SYSTEM.** By signing this Lease Agreement, you agree to permit Lessor to install a GPS system ("the System") in the Vehicle that tracks the vehicle's location and other information. The System remains Assignee's property, and is not an accession to the Vehicle. If you do not make timely lease payments, Lessor may use the System to cause the Vehicle not to start, and you may not be able to use and continue to operate the Vehicle. If you elect to purchase the Vehicle from Assignee at the End of the Lease Term, Assignee will remove the System from the Vehicle at Assignee's expense (For further information, see GPS Addendum document given to you at time of lease signing).

17. **LIMITED WARRANTY.** The Vehicle is subject to the express limited warranty provided by Lessor at the time the Lease is signed. BY SIGNING THIS LEASE, YOU RECOGNIZE AND UNCONDITIONALLY AGREE THAT LESSOR IS LEASING THE VEHICLE TO YOU "AS IS", EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW), AND AS IS PROVIDED IN THE LIMITED WARRANTY PROVIDED SEPARATELY BY THE LESSOR AT THE TIME OF LEASE SIGNING. OTHER THAN AS PROVIDED FOR UNDER THE LIMITED WARRANTY, LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. ANY DEFECT OR UNFITNESS NOT COVERED BY THE LIMITED WARRANTY SHALL NOT IN ANY WAY AFFECT YOUR OBLIGATIONS TO COMPLY WITH THE TERMS OF THIS LEASE AGREEMENT AND TO MAKE LEASE PAYMENTS TO LESSOR'S ASSIGNEE. SEE THE LIMITED WARRANTY DOCUMENT PROVIDED SEPARATELY FOR DETAILS OF THE LIMITED WARRANTY.

## VEHICLE MAINTENANCE, INSURANCE AND USE

18. **VEHICLE MAINTENANCE.** YOU MUST MAINTAIN AND SERVICE THE VEHICLE AT YOUR OWN EXPENSE. You are responsible for and agree to follow the owner's manual and maintenance schedule, make all needed repairs, and respond to recall notices. You are also responsible for all operating costs such as gas and oil. You must obtain the Assignee's prior written permission for all improvements and modifications that you make to the Vehicle, and all accessories that you add to the Vehicle shall become Assignee's property without compensation to you.

19. **VEHICLE INSURANCE AND DAMAGE AND LOSS WAIVER.**
YOU ARE REQUIRED TO INSURE THE VEHICLE AT ALL TIMES DURING THE LEASE TERM UNLESS LESSOR PROVIDES OTHERWISE IN WRITING. LESSOR IS NOT PROVIDING VEHICLE INSURANCE OR LIABILITY INSURANCE. YOU MAY PURCHASE REQUIRED INSURANCE THROUGH ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TENNESSEE OR THE STATE IN WHICH YOU LIVE. YOU MAY PROVIDE THE REQUIRED COVERAGE THROUGH EXISTING POLICIES OF INSURANCE.
Failure to obtain and maintain liability insurance is legally prescribed amounts is a default under the Lease Agreement and may result in the termination of the Lease.
Any insurance that you purchase must be acceptable to Assignee and protect both you and Assignee with: (a) comprehensive fire and theft insurance with a maximum deductible amount of $500; (b) collision/property insurance with a maximum deductible amount of $500; and (c) automobile liability insurance with minimum limits for bodily injury or death of $25,000 for any one person and $50,000 for any one accident, and $25,000 for property damage, or the minimum limits required by the State in which the vehicle is principally garaged, whichever is greater. These amounts may not be sufficient to cover all your liabilities and to pay for all repairs to the Vehicle. You may wish to consult your insurance advisor about obtaining additional coverage. You agree to list Assignee as the loss payee and additional insured under your policy. Any insurance that you purchase may not be reduced, cancelled, or terminated by your insurance company without at least 30-days prior written notice to Assignee. You must give Assignee evidence of insurance coverage and renewals whenever requested.
In lieu of obtaining the required collision/property insurance, you have the option of paying a Damage and Loss Waiver fee which provides coverage to waive your liability for certain damage to and loss of the vehicle as more fully described in the Damage and Loss Waiver document provided to you at the time you signed this Lease. If you choose to obtain the required collision/property insurance, you agree and agree that you will be charged a Damage and Loss Waiver fee in the event you fail to maintain the collision/property insurance during the lease term. The Damage and Loss Waiver fee is a substitute for collision/property insurance only (though it is not an insurance product and does not protect you to the same extent as collision/property insurance) for purposes of this Lease, and does not relieve you of your legal obligation to maintain liability insurance as required by state law. The cost of the Damage and Loss Waiver is $30.00 bi-weekly; or $32.50 semi-monthly; or $65.00 monthly, depending on your periodic payment schedule.
You agree at all times to comply with all of the conditions of any insurance policy covering the Vehicle. You further agree to promptly report to Assignee in writing all accidents, damages to the Vehicle and collisions, irrespective of fault, injury, loss, or damage, and any suit, demand, or claim, whether or not justified. You additionally agree to fully cooperate with Assignee and the insurer in all accident investigations, claims, and litigation procedures. You also agree to pay to Assignee all insurance proceeds resulting from loss or damage to the Vehicle. You authorize Assignee, on your behalf, to receive and endorse checks or drafts, and settle or release any claim under any insurance covering the Vehicle based on Assignee's ownership of the Vehicle. Unless a Damage and Loss Waiver is in effect, you agree to pay for all repairs to the Vehicle that are not paid out of the insurance proceeds.

20. **VEHICLE USE AND SUBLEASING.** You may not use, or permit others to use the Vehicle: (a) in violation of any law, (b) contrary to the provisions of any insurance policy covering the Vehicle; (c) at any time when required liability insurance is not in effect or Assignee has not been notified that collision/property insurance has lapsed; (d) outside the state where the Vehicle is titled or registered for more than 30 days without Assignee's written consent; (e) outside the United States, except for less than 30 days in Canada; or (f) as a private or public carrier. You will keep this Lease and Vehicle free of all liens and encumbrances. You may not assign this Lease or sublease or any interest in the vehicle without Assignee's prior written consent.

## LEASE END

21. **LEASE END.** You must return the Vehicle to the Lessor at Lessor's address unless Assignee specifies another place. For your convenience, you may return the Vehicle up to 7 days before the scheduled End of the Lease Term. If you fail to return the Vehicle, you must continue to pay the periodic lease payments (Item 2) plus other damages to Assignee. Payment of these amounts does not authorize you to keep the Vehicle.

22. **EXCESS WEAR AND USE.** Unless you elect at your option to purchase the Vehicle at the End of the Lease Term, you will be responsible for all repairs to the Vehicle that are not the result of normal wear and tear, and that are not listed on the final page of this Lease Agreement to be present at the time this Lease Agreement is signed. These repairs include those necessary to repair or replace: (a) Tires which are unmatched, unsafe or have less than 1/8 inch of remaining tread in any place; (b) Electrical or Mechanical defects or malfunctions; (c) Glass, Paint, Body Panels, Trim and Grill Work that are broken, mismatched, chipped, scratched, pitted, cracked, dented or rusted during the lease term; (d) Interior rips, stains, burns or worn areas; and (e) All Damage that occurred during the lease term, which would be covered by collision or comprehensive insurance, whether or not such insurance is actually in force. You are obligated to repair any damages resulting from the removal of a cellular telephone, radar detector, or other similar types of equipment. All damage repairs are subject to Assignee's approval and acceptance. Repairs must be made with original equipment manufacturer parts or those of equal quality. If you have not had the repairs made before the Vehicle is returned to Lessor, you agree to pay the estimated costs of such repairs, even if the repairs are not made prior to Assignee's sale of the Vehicle. Unless you elect at your option to purchase the Vehicle at the End of the Lease Term, you additionally are obligated to pay excess mileage fees to Assignee as provided in Section 9 of this Lease Agreement. If Assignee believes that the Vehicle odometer malfunctioned or was tampered with, and you cannot prove the actual Vehicle mileage, you agree to pay for whatever excess mileage Assignee reasonably estimates the Vehicle to have been driven.

23. **ODOMETER STATEMENT.** Federal law requires you to complete a statement of the Vehicle's mileage at the end of this Lease. Federal law also prohibits you or anyone else from tampering with the Vehicle's odometer. Failure to complete an odometer disclosure statement, or making any false statement, may result in fines and/or imprisonment.

## DEFAULT AND LOSS OF VEHICLE

24. **DEFAULT.** You will be in default under this Lease Agreement if: (a) you fail to make any payment when due or; (b) a bankruptcy petition is filed by or against you, or (c) any governmental authority seizes the Vehicle and does not promptly and unconditionally release the Vehicle to you; or (d) you have provided false or misleading material information when applying for this Lease; or (e) you fail to keep any other agreement in this Lease Agreement; or (f) your driver's license is suspended, revoked, cancelled, or is otherwise restricted; or (g) the

2

ACC1

Vehicle is stolen, lost, destroyed or is otherwise rendered unavailable or unsuitable for use or declared a total loss; or (h) you die or are declared incompetent; or (i) you otherwise fail to comply with any other term, provision or condition of this Lease or fail to keep any other promise made to Lessor or Assignee.

If you are in default Assignee may do any of the following: (a) end the Lease and require you to pay the amount due at early termination;  (b) take any action Assignee reasonably believes is required to protect its interest in the Vehicle (for example assessing a Damage and Loss Waiver fee); (c) take (repossess) the Vehicle wherever Assignee finds it and enter any property where the Vehicle may be to do so; (d) add any amounts Assignee spends taking these actions to your Lease obligation and charge rent on the amount added or, at Assignee's option, ask you to pay these amounts right away; (e) make a claim for insurance or refunds available on your default and apply such amount to the amount you owe; (f) cancel any optional products and services included with the Lease and apply any refund to amounts due on the Lease; (g) sue you for damages or to get the Vehicle back; or (g) pursue any other remedy the law gives Assignee.

Assignee will exercise its rights without breach of the peace, at reasonable times and places, in a reasonable way. Assignee may use the license plates on the Vehicle to move it to a storage place. After repossessing the Vehicle, Assignee will hold it free of any rights you may have under this Lease. Assignee may take and store any personal items that are in the Vehicle. If you do not ask for these items back, Assignee may dispose of them as the law allows. Unless you tell Assignee within ten (10) business days of any personal property you claim was in the Vehicle when it was repossessed, Assignee will not be responsible for that property. You will pay Assignee's reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the Vehicle, attorney's fees, collection costs, and court costs.

25.  **TOTAL LOSS OR DESTRUCTION OF VEHICLE.** If the Vehicle is stolen or declared to be a total loss, you are obligated to notify your insurance company and to coordinate with your insurance company to ensure payment by your insurance company to Assignee on your claim. If you complied with all provisions of this Lease, and the Vehicle is declared a total loss by your insurance company, you will owe us nothing more once we have received (i) all of the insurance proceeds due under the insurance policy required under this Lease, (ii) the deductible under such insurance policy, (iii) all Payments due and owing, and all other amounts due and owing (excluding excess mileage and wear), under this Lease and not paid up to the date when the Vehicle is declared a total loss. If the Vehicle is a total loss and the requirements of this Section are not satisfied, you will owe Assignee the early termination liability (see below).

### EARLY TERMINATION LIABILITY

26.  **EARLY TERMINATION.** You may terminate this Lease early if you satisfy your early termination obligation.  If the lease is terminated early by you or by us, you must notify Assignee in writing and return the Vehicle to Lessor at Lessor's address and pay Assignee the early termination liability described in Section 27 within 10 business days of the date Assignee asks for it.  As provided above, Assignee may terminate the Lease early if you are in default.

27.  **EARLY TERMINATION LIABILITY.**  If the Lease is terminated early you agree to pay the following early termination liability:

The lesser of:

*Calculation A:* (Adjusted Capitalized Cost, see Par. 7(c)) MINUS (Depreciation portion of periodic payments already paid, which is the amount shown in Par. 7(e) divided by the number of lease payments shown in Par. 7(h) times the number of periodic payments already paid) MINUS (Security deposit) MINUS (Realized Value of Vehicle at time of early termination); or

*Calculation B:* the total of the following: (i) the total of your remaining base periodic payments; (ii) an excess wear charge, if applicable; and (iii) an excess mileage charge, if applicable, for any miles in excess of the permitted mileage during the scheduled lease term at the rate per mile provided in the Lease.

In addition to the amount you must pay under *Calculation A* or *Calculation B*, you must also pay:

* any past due periodic payments at time of early termination;

* any official fees and taxes related to the early termination; PLUS

* any other amounts due under this Lease at time of early termination including any past due and/or unpaid late charges or damage waiver fees or other amounts due because you failed to meet your obligations under this Lease.

The Realized Value of the Vehicle is: (i) the price we receive for the Vehicle at disposition through a public or private sale; (ii) the highest offer we receive for disposition of the Vehicle; or (iii) the fair market value of the Vehicle determined in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles, including without limitation, using one or more published price listings or guidebooks regularly consulted in the industry as a source of wholesale vehicle values.

To the extent your early termination liability takes into account the value of the Vehicle at termination, you may get a professional appraisal of the Vehicle's wholesale value. If you do so within 10 days of the date you notify Assignee of the early termination or you are notified of the Assignee's termination of the Lease, the appraised value will be used as the Realized Value of the Vehicle. The appraiser must be an independent third party agreeable to both you and Assignee and you must pay for any appraisal.  The appraisal will be binding.

We may apply all or part of your security deposit to what you owe us.

### ADDITIONAL PROVISIONS

28.  **PURCHASE OPTION.**  If you decide to purchase the Vehicle upon Early Termination or Scheduled Termination, you agree to re-register and re-title the Vehicle in your name no later than 30 days from the time you purchased it and pay any fees or charges to the government agency processing said re-registration and re-titling.  If you fail to do so, Assignee reserves the right to cancel the registration.
* **Upon Early Termination.** You have an option to buy the Vehicle "as is" prior to the End of Lease Term. The price will be all remaining Periodic Rental Payments (see Par. 2) plus the Residual (see Par. 7 (c)), plus any other amounts past due and/or unpaid under the Lease. You must also pay any taxes or official fees (for taxes, tags, license and registration) imposed on such sale of the Vehicle to you.
* **Upon Scheduled Termination.**  At the End of the Lease Term, you may purchase the Vehicle "as is" for the amount set forth in the Paragraph 10 Purchase Option at End of Lease Term disclosure on page 1 of this Lease, plus the other amounts, if any, described in Paragraph 10.

29.  **RETURN CHECK/ACH FEE.**  If you make a payment under this Lease by check or ACH and your check or ACH is returned unpaid for any reason, you agree to pay a returned check or ACH fee of $25.00.

30.  **ASSIGNMENT AND ADMINISTRATION.** Lessor will assign this Lease to Assignee, after which Assignee will have all of Lessor's rights and remedies. You must pay all amounts due under this Lease to Assignee at Assignee's address indicated on page 1 of this Lease Agreement.

31.  **SECURITY INTEREST.**  To secure your obligations under this Lease Agreement, you grant Lessor and Assignee a security interest in: (a) the security deposit that you paid to Lessor at the time this Lease Agreement was executed; (b) the loss proceeds of any Vehicle insurance; and (c) the proceeds of any credit life or credit disability insurance policy and any service contract(s) purchased in connection with this Lease. Lessor may also assert a statutory lien or privilege against the Vehicle and its contents in the event that you fail to pay Lessor for repairs, services, storage parts and accessories to the Vehicle.

32.  **TRUE LEASE.**  It is declared to be the intent of the Lessee, the Lessor, and the Assignee that this Lease shall for all purposes constitute a "true lease"; if for any reason that a court should determine that this transaction constitutes a secured transaction, you hereby grant us a security interest in the vehicle, and all proceeds derived from the vehicle.

33.  **TAXES.**  You agree to promptly pay (or to reimburse Assignee for) all sales, use, lease and personal property taxes relating to this Lease or the Vehicle, whether these taxes apply directly to you or to the Lessor or Assignee. You agree to pay these amounts even if they are assessed after the Lease ends.

3



ACCT

**34. TITLING AND OTHER FEES.** The Vehicle will be owned by and titled in the name of Assignee. You agree to register the Vehicle as directed by Assignee. You agree to pay (or to reimburse Assignee for) all license, title and other related fees that may apply to the Vehicle over the Lease Term. You further agree to pay all tickets, fines and penalties that may be assessed against you, any driver or occupant of the Vehicle, or the Vehicle itself. If for some reason Assignee pays a ticket, fine or penalty on your behalf, you agree to reimburse Assignee and to pay Assignee an additional fee in the amount of $25.00 for each ticket, fine or penalty that Assignee pays.

**35. INDEMNITY.** You unconditionally agree to indemnify and hold harmless Lessor, Assignee and their employees or agents from any loss or damage to the Vehicle and its contents, and from all claims, losses, injuries (including any and all third party injuries), expenses and costs (including without limitation, attorneys' fees other costs of defense) related to the use, operation, maintenance, or condition of the Vehicle that may be asserted by any person (including, but limited, by you or your agents and employees), whether such claim may be based on negligence, breach of contract, breach of warranty, absolute liability, or otherwise.

**36. SECURITY DEPOSIT.** Your security deposit may be used by Assignee to pay all amounts that you owe under this Lease. You agree that you will not be paid or given credit for interest on your security deposit.

**37. GOVERNING LAW.** This Lease shall be subject to the laws of the United States and the State of Tennessee without regard to the conflict of laws rules of any state. If Tennessee law does not allow any of the provisions in this Lease, the ones that are not allowed will be void. The remaining provisions of this Lease will still be valid.

**38. CHANGE IN RESIDENCE OR VEHICLE LOCATION.** You agree to promptly notify Assignee in writing should you move your residence address or change the location of your principal place of employment. You further agree to immediately notify Assignee in writing should you change the location where the Vehicle is principally kept when not in use elsewhere.

**39. MODIFICATION.** Any change in this Lease must be in writing and signed by you and Assignee.

**40. RESPONSIBILITY.** Each person who signs this Lease Agreement as a Lessee or Co-Lessee is jointly and severally liable under this Agreement and is fully liable for all payments, whether or not Assignee attempts to collect from other signors.

**41. ARBITRATION PROVISION AND WAIVER OF JURY TRIAL.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and waive their rights to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS: A. For purposes of this Arbitration provision and Waiver of Jury Trial ("Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Lease, the information you gave Lessor before entering into this Lease, and any past agreement or agreements between you and Lessor or Assignee; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against Lessor or Assignee; (g) all claims asserted by you individually against Lessor or Assignee and/or any of Lessor's or Assignee's employees, agents, servicers, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against Lessor or Assignee and/or related third parties ("Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by Lessor or Assignee or related third parties of any non-public personal information about you. B. You acknowledge and agree that by entering into this Arbitration Provision: **(i) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST LESSOR OR ASSIGNEE OR RELATED THIRD PARTIES; (ii) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST LESSOR OR ASSIGNEE OR RELATED THIRD PARTIES; and (iii) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST LESSOR OR ASSIGNEE AND/OR RELATED THIRD PARTIES.** C. Except as provided in Paragraph F below, all disputes including any Representative Claims against Lessor or Assignee and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.** D. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested. Regardless of who demands arbitration, either you or Lessor or Assignee may choose to have any dispute arising under this Lease resolved by binding arbitration under the rules then in effect of the American Arbitration Association ("AAA") or any other arbitration organization you choose and that Assignee approves in writing ("the Arbitration Organization"). However, the parties may mutually agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Lease or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above. E. Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. F. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute which cannot be adjudicated within the jurisdiction of a small claims tribunal shall be resolved by binding arbitration pursuant to the terms agreed to in this Arbitration Provision. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration. Furthermore, nothing in this Arbitration Provision shall limit the right of us (a) to repossess the vehicle by the exercise of any power under the Lease or under applicable law, (b) to exercise self-help remedies, or (c) to obtain provisional or ancillary remedies such as pre-judgment seizure of property or injunctive relief, or to seek or obtain any traditional equitable relief which does not claim money damages from a court having jurisdiction. The institution and maintenance by you or Lessor or Assignee of any action set forth in this Paragraph F shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted. G. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. This Arbitration Provision is binding upon and benefits Lessor and Assignee, our successors and assigns, and related third parties. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and Lessor and Assignee and continues in full force and effect unless you and Lessor or Assignee otherwise agree in writing. If any portion of this Arbitration Provision is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Provision, unless the provision precluding the arbitrator from conducting class or consolidated arbitration as set forth in paragraphs A-C above is deemed invalid or unenforceable, in which case this entire Arbitration Provision shall be deemed void. H. Assignee agrees to pay any initial filing fee you may owe should you choose to arbitrate. Additionally, Assignee agrees for only the first day of arbitration to pay the following fees up to a maximum of $2500 in the aggregate: the arbitrator's fee, those reasonable arbitration expenses or costs (excluding attorney fees) assessed to you that you would not pay if you had brought a dispute in court, and any other reasonable expense or cost unique to the arbitration process. Assignee will also pay other amounts an arbitrator determines that Assignee must pay in order to ensure the enforceability of this Arbitration Provision. This Arbitration Provision shall survive termination or expiration of this Lease. I. OPT-OUT PROCESS. You may choose to opt-out of this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify Assignee in writing within thirty (30) calendar days of the date of this Agreement at the following address: American Financial Attn: Legal Department, 6400 Winchester Road, Memphis, Tennessee 38115. Your written notice must include your name, address, social security number, the date of this Lease, and a statement that you wish to opt-out of the Arbitration Provision.

4



ACCT

**YOU ACKNOWLEDGE THAT THIS LEASE CONTAINS AN ARBITRATION PROVISION, THAT YOU HAVE READ THE ARBITRATION PROVISION AND AGREE TO ITS TERMS.**

**THIS IS A LEASE AGREEMENT.  THIS IS NOT A PURCHASE AGREEMENT.**

NOTICE: (1) Do not sign this Lease before you read it or if it has any blank spaces to be filled in. (2) You have the right to get a filled-in copy of this Lease. You state that you have been given a filled-in copy of this Lease at the time you sign it, and that you have been notified of the assignment of this Lease by the Lessor to Assignee.

Lessee: _____   Co-Lessee: _____

DELIVERY RECEIPT: Lessee has received the Vehicle without reservation of rights, and except as noted below, Lessee acknowledges that the Vehicle is in good condition and operating order. List any and all obvious dents, damages, tears, and broken items with respect to the Vehicle as of the time the Vehicle is delivered to and accepted by you.

Lessee: _____   Date: 03-11-2020

Co-Lessee: _____   Date: _____

## CERTIFICATE OF INSURANCE

I, the undersigned Lessee, hereby certify to Lessor and Assignee that I have arranged for the purchase of: (a) comprehensive fire and theft insurance with respect to the Vehicle with a maximum deductible amount of $500; and (b) property/collision insurance with respect to the Vehicle with a maximum deductible amount of $500; and (c) automobile liability insurance with minimum limits for bodily injury or death of $25,000 for any one person, and $50,000 for any one accident and $25,000 for property damage, or the minimum limits required by the State in which the vehicle is principally garaged, whichever is greater.  My insurance company listed below has committed to issue a policy of insurance in my name, also naming Assignee as a loss payee beneficiary and additional insured party.  My insurance policy further provides or will provide that my insurance company may not reduce coverage, or cancel or terminate my insurance policy without at least 30-days prior written notice to Assignee.

Insurance Company: (Name and Address)          Agent: (Name and Address)

Lessee: _____   Co-Lessee: _____

Date: 03-11-2020

Attest:
Lessor:
By: _____

Title: _____

## ASSIGNMENT

Assignor/Lessor does hereby assign and Assignee hereby accepts the assignment of this Motor Vehicle Lease subject to the terms set forth in this Lease and the Agreement between Assignor/Lessor and Assignee.

Assignor: _____   Assignee: _____

Date: 03-11-2020   Date: 03-11-2020

5

# Georgia Certificate of Title

**DISCLAIMER: DO NOT ACCEPT THIS TITLE WITHOUT THE SECURITY THREAD LOCATED APPROXIMATELY TWO INCHES FROM LEFT EDGE.**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | TYPE OF BODY | MODEL | ODOMETER* | CYL | DATE ISSUED |
|---|---|---|---|---|---|---|---|
| KL7CJKSB2GB532754 | CHEVROLET | 2016 | MULTI-PURPOSE V | TRAX | 049667 | 4 | 04/27/2020 |
| KL7CJKSB2GB532754 | | | | | 049667 | | |

| DATE VEHICLE PUR | FUEL | NEW OR USED | PREVIOUS TITLE NBR / STATE OF ISSUE | NBR OF LIENS | COLOR | CURRENT TITLE NUMBER |
|---|---|---|---|---|---|---|
| 03/11/2020 | GASOLINE | Used | 122014807          /FL | 0 | SIL / SIL | 770033272116963 |

MAIL TO:

AF TITLE CO
6400 WINCHESTER RD
MEMPHIS TN 38115-8117

T17

## OWNER

AF TITLE CO
6400 WINCHESTER RD
MEMPHIS TN 38115-8117

* ODOMETER READING IS ACTUAL MILEAGE OF THE VEHICLE UNLESS OTHERWISE INDICATED BELOW.

IVORI Cullins

### 1ST LIEN OR SECURITY INTEREST

### 2ND LIEN OR SECURITY INTEREST

### 3RD LIEN OR SECURITY INTEREST

The Georgia Department of Revenue issued this title pursuant to the Motor Vehicle Certificate of Title Act and this title is subject to its provisions. The Department certifies that on application duly made, the person named herein is registered as the lawful owner of the vehicle described subject to any liens or security interests set forth and such liens or security interests as may subsequently be filed with the Commissioner.

### RELEASE OF LIEN OR SECURITY INTEREST

| | DATE OF RELEASE | SECURITY INTEREST HOLDER | AUTHORIZED AGENT |
|---|---|---|---|
| 1ST LIEN | | | BY |
| 2ND LIEN | | | BY |
| 3RD LIEN | | | BY |

STATE REVENUE COMMISSIONER

T/O REV. 2/19 — THIS TITLE MUST BE TRANSFERRED IMMEDIATELY INTO THE NEW OWNER'S NAME. CAUTION: $100 FINE OR 30 DAYS IMPRISONMENT FOR ACCEPTANCE OR DELIVERY OF EACH CERTIFICATE OF TITLE ASSIGNED IN BLANK. TAG REGISTRATION MUST BE TRANSFERRED WITHIN 30 DAYS OF OWNER WILL BE SUBJECT TO FINE OF UP TO $100. NEW VEHICLES MUST BE REGISTERED WITHIN 30 DAYS OF THE DATE OF PURCHASE. OWNER MUST COMPLETE ALL SPACES IN FULL. DO NOT USE RED INK. **NOTICE:** ANY ALTERATION VOIDS THIS TITLE.

## ASSIGNMENT AND WARRANTY OF TITLE BY OWNER

TO BE COMPLETED BY SELLER and delivered with the vehicle to the purchaser. Effective July 1, 2008, an application for new Certificate of Title must be made by purchaser on title application form and filed within 30 days of date of purchase in order to avoid $10.00 penalty. If the vehicle described hereon is junked or dismantled, this Certificate of Title must be returned to the Motor Vehicle Division within 72 hours. FEDERAL and State Law requires that you state the odometer reading in connection with transfer of ownership. Failure to complete ODOMETER STATEMENT OR providing a FALSE STATEMENT may result in fines and/or imprisonment. The undersigned hereby sells, assigns or transfers the vehicle described on the face of this certificate to:

*(left vertical text)* DO NOT ACCEPT TITLE SHOWING ANY ALTERATIONS, ERASURES OR MUTILATIONS

### ALL BLOCKS MUST BE COMPLETED ACCURATELY. SUBMIT SIGNED & NOTARIZED AFFIDAVITS EXPLAINING ANY ERRORS.

**NOTICE TO BUYER**

PURCHASER'S LEGAL NAME

STREET OR R.F.D. NO.

CITY, STATE & ZIP CODE

COUNTY OF RESIDENCE

DATE OF SALE/TRANSFER

Any alteration or erasure of date of sale will result in a $10.00 Penalty Fee.

"I/we certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

ODOMETER READING    NO TENTHS

*CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The odometer reading stated is in excess of its mechanical limits
☐ 2. The odometer reading is NOT the actual mileage.

**WARNING: ODOMETER DISCREPANCY**

I/WE WARRANT THAT SAID VEHICLE IS FREE OF ALL SECURITY INTERESTS, LIENS OR ENCUMBRANCES EXCEPT AS NOTED BELOW:

Transferor's (SELLER'S) Printed Name
Transferee's (BUYER'S) Printed Name

Transferor's (SELLER'S) Signature X
Transferee's (BUYER'S) Signature X

*(left vertical text)* REMOVE YOUR TAG FROM THIS VEHICLE WHEN YOU ASSIGN TITLE TO THIS VEHICLE TO A NEW OWNER

### DEALER (COMPLETE ALL SPACES IN FULL)    DO NOT USE RED INK

**1st DEALER'S ASSIGNMENT**

I/WE WARRANT THAT SAID VEHICLE IS FREE OF ALL SECURITY INTERESTS, LIENS OR ENCUMBRANCES EXCEPT AS NOTED BELOW. We also warrant this Title and certify that the vehicle described herein has been transferred to the following:

Purchaser's Legal Name    Purchaser's Address    County of Residence

Dealer's Permanent ID Number or Dealer's Master Tag Number    Unauthorized use may lead to prosecution    Registered Dealer's Name

"I/we certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

☐ 1. The odometer reading stated is in excess of its mechanical limits
☐ 2. The odometer reading is NOT the actual mileage.    **WARNING: ODOMETER DISCREPANCY**

ODOMETER READING    NO TENTHS    Date of Sale/Transfer

Transferor's (SELLER'S) Printed Name
Transferee's (BUYER'S) Printed Name

Transferor's (SELLER'S) Signature X
Transferee's (BUYER'S) Signature X

**2nd DLR. ASSIGNMENT**

Purchaser's Legal Name    Purchaser's Address    County of Residence

Dealer's Permanent ID Number or Dealer's Master Tag Number    Unauthorized use may lead to prosecution    Registered Dealer's Name

"I/we certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

☐ 1. The odometer reading stated is in excess of its mechanical limits
☐ 2. The odometer reading is NOT the actual mileage.    **WARNING: ODOMETER DISCREPANCY**

ODOMETER READING    NO TENTHS    Date of Sale/Transfer

Transferor's (SELLER'S) Printed Name
Transferee's (BUYER'S) Printed Name

Transferor's (SELLER'S) Signature X
Transferee's (BUYER'S) Signature X

**3rd DLR. ASSIGNMENT**

Purchaser's Legal Name    Purchaser's Address    County of Residence

Dealer's Permanent ID Number or Dealer's Master Tag Number    Unauthorized use may lead to prosecution    Registered Dealer's Name

"I/we certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

☐ 1. The odometer reading stated is in excess of its mechanical limits
☐ 2. The odometer reading is NOT the actual mileage.    **WARNING: ODOMETER DISCREPANCY**

ODOMETER READING    NO TENTHS    Date of Sale/Transfer

Transferor's (SELLER'S) Printed Name
Transferee's (BUYER'S) Printed Name

Transferor's (SELLER'S) Signature X
Transferee's (BUYER'S) Signature X

*(right vertical text)* TAGS MUST BE TRANSFERRED OR PURCHASED WITHIN 30 DAYS OF THE PURCHASE DATE OR THE OWNER WILL BE SUBJECT TO FINES UP TO $100 BY LAW ENFORCEMENT FOR IMPROPER REGISTRATION.

### LIEN OR SECURITY INTEREST HOLDER TO BE RECORDED ON NEW TITLE
#### The lien/security interest holder must be shown on the title application

**LIEN**

LIEN/SECURITY INTEREST HOLDER'S Name

LIEN/SECURITY INTEREST HOLDER'S Address

**ATTN: DEALERS AND DISTRIBUTORS.** Retain a copy of front and back of this document. Retention period: 3 Years.

### NOTICE: ANY ALTERATION OR ERASURE VOIDS THIS TITLE